## Ciabattari License

Before Gibson, P. J., Carson and Cummins, JJ.

*Michael Hanna* and *David H. Weiner*, for appellants.

*Andrew G. Uncapher*, for Liquor Control Board.

CUMMINS, J., November 28, 1947.—On August 27, 1946, Ralph and Sylvia Ciabattari filed with the Pennsylvania Liquor Control Board an application for a restaurant liquor license for premises located at 16 Main Street, Burgettstown, Washington County, Pa.

On the date of this application and for some 14 years prior thereto, Ralph and Sylvia Ciabattari held a malt beverage license at the aforesaid premises in the Borough of Burgettstown, Washington County, Pa.

At the time of filing the said application, the applicants indicated their intention to relinquish the malt beverage license for a restaurant liquor license.

Subsequently, on October 15, 1946, appellants were notified that the quota of licenses in this municipality was exceeded and on October 22, 1946, a hearing upon said application was held. On November 8, 1946, the Liquor Control Board handed down the following opinion and order:

"On August 29, 1946, Ralph and Sylvia Ciabattari filed with this board an application for restaurant liquor license for premises numbered 16 Main Street in the Borough of Burgettstown, and County of Washington.

"On October 22, 1946, a hearing upon said application was held after notice to applicants as required by law. At the said hearing, which was attended by applicants and their counsel, the evidence adduced established the following facts:

"1. The Act of June 24, 1939, P. L. 806, provides for a quota of three retail licenses for the sale of liquor and malt beverages in Burgettstown, Washington County, and there are at the present time eight such licenses in effect which are of the type counted against the said quota. Accordingly, the quota of retail licenses for the said municipality is exceeded.

"2. The board is without authority to grant any additional licenses in the said municipality except for hotels meeting the requirements of the aforementioned act.

"As provided by the Act of June 24, 1939, P. L. 806, no new licenses, except for hotels meeting the requirements, shall be issued in any municipality

wherein the quota prescribed by the said act is filled or exceeded. Therefore, the board is of the opinion that this application for a new restaurant liquor license for premises located within the said municipality must be refused. Accordingly, the following order is made:

### "Order

"And now, November 8, 1946, for the above reasons it is ordered and decreed that the restaurant liquor license applied for by Ralph and Sylvia Ciabattari for the premises numbered 16 Main Street in the Borough of Burgettstown and County of Washington be and it is hereby refused."

From that order, appellants appealed and the same was allowed by the court of common pleas, and filed to the above number and term.

It is admitted that there are seven retail licenses for the sale of liquor and one license which is held by appellants for the sale of malt beverages in the Borough of Burgettstown, Washington County, Pa.

It is also admitted that the quota for sale of liquor and malt or brewed beverages in the Borough of Burgettstown, Washington County, Pa., is three, so the sole question involved in this appeal is one of law, namely: Was this an application for a new license or merely an exchange or transfer from one class to another under a correct interpretation of the Quota Act?

We had hoped that the last session of legislature would clear up the confusion that exists in the lower courts of Pennsylvania on this question, but the members of that body refused to record their positions. They could have legislated an appeal to the Superior Court so there would be one law for the whole State. The legislature elected not to do this.

This question has arisen a number of times in the lower courts of Pennsylvania and there is a diversion of opinion, and it is our aim only to pronounce the

law as we find it and not to criticize the opinions of the other courts not in accord with ours.

The contention of appellants is that this is not an application for a new license, but merely an exchange from one class of license to another within the meaning of section 2 of the Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1002, which provides:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants, or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; . . . Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

It is interesting to note, from a purely historical point of view, the sequence of the regulation by the State legislature of the retail sale of intoxicating liquors since the repeal amendment to the United States Constitution. The Beverage License Act of May 3, 1933, P. L. 252, was first adopted after the Congress of the United States authorized the sale of 3.2 percent beer and provided for the issuance of beer licenses by county treasurers. No liquor licenses could then be issued because of the provision in the United States Constitution. After the adoption of the repeal amendment, a special session of the Pennsylvania

Legislature, held in 1933-1934, passed the Pennsylvania Liquor Control Act on November 29, 1933, P. L. 15. Subsequent amendments to both the Liquor Act and the Malt or Brewed Beverage Act of 1936 and 1937 consolidated full control over the issuing of all types of licenses in the Liquor Control Board. These acts could have, and probably should have, been consolidated into one act, but were left separate. This mere fact cannot give rise to an argument that this expresses an intention to consider a liquor license as different in class from a beer license because both types are now controlled by the one board. In fact, the Quota Law of June 24, 1939, is obviously intended to be an amendment to both the Liquor and the Malt or Brewed Beverage Acts treating them to be in pari materia, and indicating that the issuing of both liquor licenses and malt or brewed beverage licenses are considered the joint duties, among other things, of the Liquor Control Board, although these are covered by separate acts.

An opinion of the Attorney General of Pennsylvania, Club Liquor License Quota, 36 D. & C. 225, clearly indicates the connection between the Liquor Act and the Malt or Brewed Beverage Act and reads as follows:

"Since the Pennsylvania Liquor Control Act and the Beverage License Law relate, in part, to the same things or class of things, they are in pari materia, and are to be construed together, if possible, as one law: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 62, 46 P. S. Section 562. It will be noted also that both acts were either passed or amended at the same special session of the legislature in 1933, and it is to be presumed that the General Assembly acted with full knowledge of that fact: Statutory Construction Act, supra, Art. IV, Section 52, 46 P. S. sec. 552."

The Attorney General's opinion, as cited above, expresses a rule of law which is stated in 59 C. J. 858, under the heading:

"Amendment of separate statutes by one statute.

"If two statutes are distinct and have no connection with, or relation to, each other, they cannot be amended by one bill; but if they treat of matters that are germane to the same subject and might properly have been enacted in one bill, under one title, and include but one general subject, they may be amended by one bill."

In view of the above, can it then be said that a liquor license is to be classified as a new license as against a beer license, merely because each is governed by a seperate act? The fact of the matter is that the difference in requirements of premises for either a liquor license or a beer license have been almost altogether removed. The prohibitions as to the nearness of a church, school, charitable institution, etc., applied to both types of licenses; the prohibitions as to the issuing, revoking, transferring and suspending of licenses are substantially alike and the same with the prohibitions for appeals, penalties upon revocations, etc.

Both acts have similar provisions for local option in the electors. Both require the signature of 25 percent of the electors on the petition for the option and must be expressed in the primary before a municipal election. Counsel points out the similarity in the acts to indicate the legislative intent to have both acts considered together in any interpretation and that the word "license" as used in the Quota Act means licenses under both acts interchangeably. Furthermore, section 3(c) of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, specifically provides as follows:

"Except as otherwise expressly provided the purpose of this act is to prohibit transactions in liquor, alcohol, and malt or brewed beverages which take

place in this Commonwealth, except by and under the control of the board. . . ."

The title of the Liquor License Quota Act of 1939, P. L. 806, reads as follows:

"An act limiting the number of licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages, to be issued by the Pennsylvania Liquor Control Board; . . ."

It is obvious that the intent of the legislature was to limit the total number of licenses, and not the number of any particular type of license or class of license, be it a liquor or beer license, as commonly called, or whether they be for hotels, clubs or restaurants or eating places. No distinction is expressed in the title as to the intent to limit the number of licenses of any class, but the intent is clearly expressed to limit the total number of such licenses to be issued. Had the legislature intended to limit each type of license, beer and liquor, it could have used language intended specifically to do so; the legislature did not distinguish between liquor and beer licenses when it determined that both should be counted alike in a municipality; and the Liquor Control Board did count all retail restaurant licenses alike regardless of whether they were for liquor or for beer in determining the quota; thus, an exchange of one for the other is clearly envisaged in the act and is not prohibited.

The purpose of the act as expressed in section 3 of the Act of 1933-1934, P. L. 15, was, "for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon;" and the two primary objects the legislature wanted to accomplish were to get rid of the speakeasy and of the saloon. The method evidently adopted to accomplish its purpose was to confine the sale of intoxicating liquors to bona fide hotels, restaurants and clubs and this act must be so construed as to accomplish this purpose, not necessarily by limiting

the number of licenses, but by strictly confining them to legitimate eating places.

Now the Quota Act must be construed in the light of the purpose expressed in the Liquor Act, supra, not to prohibit the sale of liquor but to control it. The Quota Act restrains the sale of liquor by limiting the number of licenses to be issued but nowhere does it indicate an intention to restrain the sale of liquor more so than that of beer. Nowhere does the act indicate an intent to restrain the issuance of liquor licenses instead of beer licenses; nowhere does it consider the sale of liquor as a greater evil than the sale of beer and therefore, to be more rigidly restrained; nowhere is there an indication of an intention to prevent any increase in the ratio of the number of liquor licenses to the number of beer licenses, so long as the total number of licenses is not increased. The evil or mischief to be remedied by the Quota Act is not the excess sale of liquor over the sale of beer, if any, but the mischief appears to be the excessive number of licensed places for the sale of liquor or brewed beverages and for the sale of liquor and malt or brewed beverages allowed. The legislature could easily have stated in the act that no further liquor licenses shall be issued if the sale of liquor were the mischief to be remedied.

This clearly expressed intention of the legislature merely to limit the number of licensed premises does not prohibit the board from issuing a liquor license to a qualified premises holding a beer license where there has been an offer to surrender such beer license, since the limit of the number of licenses is not infringed upon and there is no new license issued in the sense that there will be an additional one. Unquestionably, the words as set out in section 2 of the Quota Law, "no new license" shall be granted, is intended to mean "no additional licenses" shall be granted which would increase the present number of licenses. That is

the mischief intended to be remedied by the act, the excessive number of licensed permises which the act prohibits increasing by issuing additional licenses to new premises.

The action of the Liquor Control Board in denying the application of appellants was not based upon the ground that the total number of licenses in the Borough of Burgettstown exceeds the quota provided for by the act. The board's action was based on the interpretation that the granting of the application would set up an additional license in the borough, increase the number and thus violate the act. In contemplation of the act limiting the number alone, the application is not "for a new and different license." Nor is it a question of how many licenses are in effect in Burgettstown, for no matter how many there are, there is a saving clause in the statute preserving to the board the right "to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinafter prescribed."

It is not reasonable to assume that the legislature intended to restrict and limit the power and authority of the Pennsylvania Liquor Control Board in issuing and transferring licenses. The real question is not whether there is any law which compels the board to permit a restaurant liquor license to be substituted for a malt beverage license. The real question is the power of the board under the act to grant this application. The board held that it had none because it would be a new license, which was erroneous, because whether new or not, it would not have increased the number and therefore the board's action was based upon a misinterpretation of the statute and its purpose. The question is not whether the board acted in an arbitrary or unreasonable manner. It is simply a question whether the board's interpretation of the statute is right or wrong. We adopt the reasonable

interpretation of the Quota Act as held by the Dauphin County court in the case of the Appeal of Country Club of Harrisburg, 55 D. & C. 65.

In the matter of the appeal of the Country Club of Harrisburg from the order of the Liquor Control Board refusing to grant a catering club liquor license, the question of law decided in that case is the precise question of law to be decided in the instant case before us. The opinion in that case was written by Rupp and Woodside, JJ. The court in its opinion stated (p. 66) :

". . . The statute has but one purpose, declared in its title and easily distinguishable throughout its provisions—namely, to limit the *number* of retail licenses issued. Thus, it fixes the ratio of licenses to population which is to be maintained, but makes no attempt to regulate the class of licenses within that ratio. Rather, it specifies that they may be 'of any class'. It follows that once a quota has been exceeded, the prohibition regarding 'new' licenses is not against the issuance of a *different class* of license to be substituted for one already in effect, but against the granting of an *additional* license which would increase the number already in effect. Hence, under the act, the approval of the appellant's application would not be tantamount to the issuance of a 'new' license.

"To hold otherwise would be to impute to the legislature an intent both to limit the number of licenses issued and to 'freeze' the class of licenses within that number. We see nothing in the act to warrant such an interpretation."

In a concurring opinion in the same case by his honor, Judge William M. Hargest, presiding judge, the following appears (p. 70) :

"We are not prepared to say that when the legislature says that where the number exceeds the limitation no *new* license shall be granted that the word 'new' contemplates all transfers or exchanges. If that were so, where there was a license for both the retail sale

of liquor and of malt or brewed beverages a licensee could not surrender his liquor license even though he desired to sell only malt or brewed beverages.

". . . We do think the word 'new' does not include 'exchange'; but, if it is interpreted in the sense of 'additional', then we effectuate the intention of the legislature . . . because the purpose of the statute is to limit the number of licenses, and the prohibition is against increasing the number of licenses where the limitation has been exceeded.

". . . an exchange of a license is not a 'new' license within that statute."

Dauphin County is one of the few counties of the State whose courts have held that club licenses are within the purview of the Quota Act, so it is obvious that the Harrisburg case was decided by that court solely on the ground that the granting of the application would not increase the number of licenses and would therefore not violate the statute.

The number to which the Quota Act limits the licensed places in each municipality is one of any class for each 1,000 inhabitants or fraction thereof, preserving the right of the board "to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed. . . ." The act makes no distinction between the classes and is indifferent as to how many of each class shall exist within that quota. For example, in a municipality of 10,000 entitling 10 licensed places under the limitation of the act, the act is indifferent whether one of them shall be a beverage licensed place and nine liquor licensed places or vice versa. It is the number alone that is limited by the act.

The contention of appellants in the instant case is that the restaurant liquor license for which they have applied cannot be considered a "new" license within the meaning of the Quota Act, supra, because if and

when the said liquor license is issued, they will surrender their malt beverage license, and thereby the number of retail liquor and malt or brewed beverage licenses in the Borough of Burgettstown will not be increased; in other words, the number of liquor licenses and malt or brewed beverage licenses in the Borough of Burgettstown will remain at eight, even though the liquor license is granted in this case.

The facts in the appeal of Charles R. and Kathryn M. Frace reported at no. 158, April sessions, 1946, in the Court of Quarter Sessions of Luzerne County, are precisely similar to the facts in the instant case. Judge Farrell, who wrote the majority opinion stated:

"It was not an application for a new license but merely an exchange or transfer from one class to another, which would not increase the number already in existence."

In the appeal of the Pennsburg Fire Company, 62 Montg. 227, the facts are similar to those in the instant case. The court in that case held that a grant of liquor license would not be a new license within the meaning of the Quota Act and stated (p. 230):

"In fixing the quota, licenses for the sale of malt or brewed beverages were considered as well as liquor licenses, and it is the aggregate of these licenses that fixes the quota. If the appellant surrenders its beer license and obtains a liquor license, the number of licenses charged against the quota in Pennsburg will not be changed. It is true that the respective licenses issued under the various statutes are different and distinct, as pointed out in the opinion of the Superior Court in *Kester's Appeal*, supra, but the legislature in establishing the quota made no distinction between beer and liquor licenses, and the obvious purpose of the quota act was to limit the number of licenses granted for the retail sale of malt or brewed beverages and liquor.

"It seems to us a reasonable interpretation of the quota act to hold that the legislature sought to fix a

limit on the number of licenses granted for the retail sale of malt or brewed beverages and liquor in a municipality, and to set up a method of ascertaining this limit or quota, beyond which no additional licenses could be granted, and it was the number and not the class or type of licenses that the legislature had in mind. So long as the permitted number is not exceeded, the liquor control board may grant a license of any class within the scope of the quota act."

In Inch's Appeal, 56 D. & C. 320, Judge Hoban in his opinion filed June 3, 1946, held that the exchange of a license for the retail sale of malt or brewed beverages for a license for the retail sale of liquor does not constitute the issuance of a new license within the meaning of the Quota Law and in his opinion stated (p. 326):

". . . the concept of retail sale applies to all dealers licensed under the various types or classes of licenses just discussed. But the idea that all of these various classes of licenses were to be stabilized at the existing number as of June 24, 1939, in all localities where all combined exceeded the quota requirements, does not seem to give a logical construction to our liquor control laws so as to give effect to all their provisions, and we venture to say that the Liquor Control Board gives no such administrative interpretation to the provisions of the law, particularly with reference to public service licenses, sacramental wine licenses and distributors' and importing distributors' licenses.

"There is no logical reason why any other administrative or legal interpretation should be given to the situation with reference to retail dispensers' licenses for eating houses under the Beverage License Law, or to restaurant liquor licenses under the Pennsylvania Liquor Control act, with which situation we are immediately concerned. Let us examine the consequences further. If in the City of Carbondale we may assume that out of 30 licenses of these two classes now issued

there is but one restaurant liquor license and 29 retail dispensers' licenses, would it be held that in a city of 20,000 population it would be logical to assume that the legislature meant to restrict after June 24, 1939, restaurant liquor licenses to the single one in existence? We think such an interpretation would be absurd and unreasonable, but such would be the strict interpretation of the language of the quota law if we are to agree with the position of the Liquor Control Board.

"Following the reasoning set forth above, we are of the opinion that in order to give effect to all the provisions of the liquor control laws, including the Act of 1939, considering the object to be attained, the consequences of the interpretation desired by the Liquor Control Board, and the absurd and unreasonable results which would follow that interpretation, the prohibition against the issue of new licenses in the Liquor Control Act must be considered limited to mean an additional license, and over the authorized quota or the number of combined licenses issued as of June 24, 1939, and still in effect. It follows that the exchange of a license for the retail sale of malt or brewed beverages, for a license for the retail sale of liquor does not constitute the issue of a new license within the meaning of the quota law, and hence that the appeal in this case must be sustained."

The following cases also support the contention of appellants in the instant case: West End Athletic Club, no. 43, May term, 1946, Northumberland County; Appeal of Rose Kozlowiski, trading as Kozlowski's Inn, no. 11, May term, 1946, Westmoreland County.

Following the reasoning set forth above, we make the following

### Order

And now, November 28, 1947, the appeal is sustained, and the Pennsylvania Liquor Control Board

is directed to issue to Ralph and Sylvia Ciabattari, trading and doing business as Capital Restaurant, a restaurant liquor license for the premises at 16 Main Street, Burgettstown, Washington County, Pa., upon the surrender of the retail dispenser's license now in their possession.

## Concurring Opinion

CARSON, J., November 28, 1947.—I concur in the opinion written by Cummins, J.

The question is, whether an application to secure a restaurant liquor license and to relinquish a malt beverage license is permitted under the Liquor Control Act of Pennsylvania. It is admitted that applicants operated a large restaurant and that they were entitled to the requested transfer if permitted by law. If such exchange would increase the quota, this court is without power to grant the license.

The question raised in this case is not novel. It has been raised recently in many of the counties of the Commonwealth. The court has been furnished with many, if not all, of the reported opinions of the various courts. The courts and the members of the courts have reached different conclusions, and some of the courts have reversed their decisions on this question. The reported decisions show exhaustive research and study in reaching opposite conclusions. Since the decisions of the courts of this State are nearly equally divided, it would be presumptive for this court to say that either of the conclusions is erroneous or that the proper interpretation of the act is obvious.

This diversity of opinion among the decisions of the courts clearly indicates the ambiguity of the law relating to issuance of such licenses. This ambiguous legislation, which has caused the judiciary so much difficulty, is properly a matter for the legislature. The legislature could very easily, if it so desired, clarify this ambiguity in the Liquor Control Act. The courts

have repeatedly requested such clarification. The members of the legislature unquestionably are familiar with the inconsistent interpretations of existing law made by the courts.

A common and uniform procedure having been provided for the licensing and the sale of beer and liquor, both having been included within the quota, we do not think that the legislature intended to prevent the exchange of such licenses. To construe the act otherwise would create unusual situations. For example, in a municipality where six beverage licenses had been obtained, being the full number according to law, and these were the licenses at the time the Quota Law was enacted in 1939, the interpretation of the law as requested by counsel for the Liquor Control Board would prohibit the legal sale of liquor in such municipality. Such a situation would most assuredly restore bootleg and illicit liquor traffic, and thereby create the situation which the Pennsylvania Liquor Control Act was trying to eradicate.

For these reasons, as well as the reasons set forth in the opinion prepared by Cummins, J., and the cases therein cited, it would appear that the appeal should be sustained. This legislative ambiguity cannot be clarified except by the legislature, and the court should not attempt to provide laws by judicial construction which the legislature itself has refused to enact.

*Dissenting opinion*

GIBSON, P. J., November 28, 1947.—I find myself unable to agree with the conclusion reached in the majority opinion or with the reasoning there advanced. There has been disagreement among the courts of the various counties of the State concerning whether or not a beverage license can be "exchanged" for a liquor license. Among those courts which hold that such cannot be done are the courts of York County, Wyoming County, Indiana County, Law-

rence County, Lehigh County, Schuylkill County, Luzerne County, Chester County, Philadelphia County, Montgomery County, Lancaster County, Bedford County, Venango County and Fayette County, which I suggest are very respectable authorities. Also, the Superior Court has expressed its opinion on this matter in Kester's Appeal, 140 Pa. Superior Ct. 293, as follows:

"The respective licenses authorized [by the Pennsylvania Liquor Control Act and the Beverage License Law] . . . are different and distinct, and transfers or exchanges from one kind of license to the other are not contemplated, except on the basis of new applications, which are subject to the limitations prescribed by the Act of 1939, P. L. 806, . . ." limiting the number of retail licenses. It is claimed by some that this expression of the Superior Court was not necessary in the decision and that it is dicta. Nevertheless, it is an expression of opinion by the members of the Superior Court bench which entitles it to serious consideration. Particularly is this so when the courts of the several counties in the State are unable to agree.

Through a long period of Pennsylvania history it has been found necessary to regulate and restrain the use of intoxicating liquors. Immediately following the prohibition era, licenses for the sale of beverages with a limited alcoholic content were issued by county treasurers. The act authorizing this, together with its supplements and amendments, constitutes the Beverage License Law. When the Liquor Control Board was created, it was given power to grant licenses for the dispensing of liquor and there was also transferred to it the authority to issue licenses under the Beverage License Law.

The Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, is entitled, "An Act to regulate and restrain the sale, importation, and use of certain alcoholic beverages," etc. This act granted certain powers

to the Liquor Control Board to set up State liquor stores and to grant several types of licenses. The definitions of the act clearly distinguish spiritous, vinous, fermented and other alcoholic beverage from malt liquors which are regulated by the beverage acts. It is clear, therefore, that the purpose of the legislation which furnishes the foundation of all Pennsylvania Liquor Control Board authority is to regulate and restrain.

The Pennsylvania Liquor Control Act, art. I, sec. 3, both in the original and as finally amended by Act of June 16, 1937, P. L. 1762, provides for its interpretation, namely:

"(c) Except as otherwise expressly provided, the purpose of this act is to prohibit transactions in liquor, alcohol and malt or brewed beverages which take place in this Commonwealth, except by and under the control of the board, as herein specifically provided, and every section and provision of the act shall be construed accordingly."

Also, under the same section, clause (a) : "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; . . ."

This legislation was followed by the Liquor License Quota Act of June 24, 1939, P. L. 806, which prohibited the future granting by the Pennsylvania Liquor Control Board of a license for the retail sale of malt or brewed beverages or the retail sale of liquor or malt or brewed beverages in excess of one such license of any class for each 1,000 inhabitants or fraction thereof in any municipality, excluding licenses granted to hotels and clubs.

In the case considered here, the quota permissible for all licenses, excluding hotels and clubs, is three. There have already been granted seven liquor licenses

and one beverage license, being the one which appellants seek to surrender and have granted to them a new liquor license. Appellants claim the right to do this. The majority opinion holds that appellants have the right to exchange or transfer from one class of licenses to another and that such being the case this does not constitute an increase in the number of licenses. As I view the majority decision, it assumes powers nowhere given to the court to do that which the Liquor Control Board is expressly forbidden to do and amounts to judicial legislation through an unjustifiable construction of the several acts relating to beverage and liquor licenses. The legislature has provided for transfers of licenses from one person to another and from one place to another, but nowhere in any legislation relating to either liquor or beverage is there any authority for a transfer from one class to another. There is no authority either in the Liquor Control Board or elsewhere for an exchange of one type of license for another. The two types of licenses or privileges granted come from different sources notwithstanding the Liquor Control Board supervises both. There can be no "exchange" under the usual definition that exchange is the act of taking one thing for another regarded as an equivalent. The two types of licenses are not equivalent. By means of a strained construction of the liquor laws the license privileges in the Borough of Burgettstown are being increased. This is the very purpose of appellants' application. Appellants applied for a new liquor license and their application so shows, and, upon such being granted, offer to surrender a beverage license after the quota had been more than twice filled. The reasoning that the granting of this new liquor license is not an increase of licenses in violation of the provision of the Quota Act is unsound. I believe the determination of the Pennsylvania Liquor Control Board in this case was the correct one and that the appeal should be dismissed.